UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY DOUGLAS, <br><br>             Plaintiff, <br><br>      -v.- <br><br> CITY OF NEW YORK and C.O. CAROL GARCIA, *Shield No. 17515*, <br><br>             Defendants. | 18 Civ. 9327 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

On July 23, 2018, a fight broke out between Plaintiff Gregory Douglas and another inmate at the Bellevue Hospital Prison Ward.  Plaintiff alleges that during this fight, New York City Department of Correction ("DOC") Officer Carol Garcia slapped him in the face, injuring his eye.  In consequence, Plaintiff brought this civil rights action under 42 U.S.C. § 1983 against Officer Garcia and the City of New York (the "City," and together with Officer Garcia, "Defendants"), alleging that Officer Garcia applied excessive force, thereby violating Plaintiff's constitutional rights.  Defendants now move for summary judgment.  For the reasons that follow, the Court grants Defendants' motion for summary judgment in full.

## BACKGROUND[1]

### A.    Factual Background

The alleged use of excessive force in this case was the culmination of a series of altercations between Plaintiff and another inmate (the "Inmate") that

---

[1]    The facts in this Opinion are drawn primarily from Defendants' Statement of Material Facts pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Defendants' 56.1 Statement" or "Def.

occurred on the afternoon of July 23, 2018, while both were pretrial detainees at Bellevue Hospital's Prison Ward. According to Plaintiff, the Inmate confronted Plaintiff as Plaintiff was having a heated conversation with Officer Garcia. (Pl. Dep. 20:7-22). After Garcia left the area, and despite the efforts of prison inmates and staff to deescalate the situation, the war of words between Plaintiff and the Inmate took a turn for the physical. Despite having been previously separated, the Inmate approached Plaintiff's room with the apparent intent to use physical force against Plaintiff. (Def. 56.1 ¶¶ 1-4; Pl. Dep. 32:9-12, 40:5-41:9). The Inmate swung at Plaintiff and missed, and Plaintiff responded by punching the Inmate twice and knocking him to the ground. (Def. 56.1 ¶¶ 5-6; Pl. Dep. 41:10-13, 42:5-43:4). As the Inmate attempted to get up, he grabbed Plaintiff by the waist, causing Plaintiff to believe that the Inmate was going to pull him to the ground. (Def. 56.1 ¶¶ 7-8; Pl. Dep. 42:13-43:10). In response to this perceived threat, Plaintiff wrapped his hand around the Inmate's neck to prevent the Inmate from getting up. (Def. 56.1 ¶ 9; Pl. Dep. 42:13-43:4, 49:17-22). With the Inmate's neck still firmly in Plaintiff's grasp, Plaintiff "got slammed on the floor," at which time Bellevue staff,

---

56.1" (Dkt. #74)) and Plaintiff's deposition taken on January 7, 2021 (Dkt. #86, Ex. A ("Pl. Dep.")). The Court's consideration of the materials in the record is discussed further in the text of this Opinion.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion for summary judgment as "Def. Br." (Dkt. #75). The Court understands Plaintiff's letter dated May 18, 2021, to have been submitted in opposition to Defendants' motion for summary judgment and refers to it as "Pl. Opp." (Dkt. #78). The Court refers to Defendants' reply brief as "Def. Reply" (Dkt. #82).

including nurses and correction officers, "came running." (Def. 56.1 ¶ 10; Pl. Dep. 43:20-44:6, 44:25-45:9).

As the physical struggle continued, Plaintiff ended up lying on his back with both hands wrapped around the Inmate's neck, while the Inmate was positioned on top of Plaintiff, biting Plaintiff's abdomen. (Def. 56.1 ¶¶ 14-15; Pl. Dep. 43:11-15, 43:20-44:13). A nurse attempted to break up the altercation, interposing her arm near the Inmate's neck and ordering Plaintiff to "get off his neck," but Plaintiff would not comply. (Def. 56.1 ¶¶ 16-18; Pl. Dep. 45:17-46:1, 49:3-25, 55:1-3). The Inmate struggled to break free from Plaintiff's hold, while the nurse grabbed Plaintiff's arm in an unsuccessful attempt to dislodge the two combatants. (Def. 56.1 ¶¶ 19-20; Pl. Dep. 49:15-22, 55:1-21). Plaintiff then "got slapped" in the face one time. (Def. 56.1 ¶ 21; Pl. Dep. 54:17-46:1).

Though alleging that Officer Garcia slapped him, Plaintiff did not actually see her slap him. (Def. 56.1 ¶ 22; Pl. Dep. 50:1-23). Rather, Plaintiff says that after he felt a slap, he looked up to see Officer Garcia standing over him. (Def. 56.1 ¶ 23; Pl. Dep. 50:9-23, 54:6-19).[2] Even after being slapped, however, Plaintiff still did not release his hold on the Inmate's neck. (Def. 56.1 ¶ 24; Pl. Dep. 49:3-12, 53:3-7). A captain intervened, grabbing Plaintiff to separate him from the Inmate, while another officer placed his hands on the Inmate's

---

[2]     Defendants deny Plaintiff's allegation that Officer Garcia ever slapped Plaintiff. (Def. Br. 6). However, Defendants accept Plaintiff's allegation as true for purposes of this motion and argue that even taking Plaintiff's allegations as true, they are entitled to summary judgment. (*Id.*).

shoulder, causing the Inmate to fall backwards.  (Def. 56.1 ¶¶ 25-26; Pl.
Dep. 53:3-7, 54:6-19, 56:8-17).  Only then did Plaintiff let go of the Inmate's
neck.  (Def. 56.1 ¶ 27; Pl. Dep. 53:3-7, 56:8-17).

## B.    Procedural Background

Plaintiff filed a request for leave to proceed *in forma pauperis* ("IFP") (Dkt.
#1) and a complaint (the "Complaint" or "Compl." (Dkt. #2)) on October 12,
2018; he initially brought claims against a "Jane Doe" Correction Officer and
then-DOC Commissioner Cynthia Brann.  The Court granted Plaintiff's IFP
application on November 7, 2018.  (Dkt. #4).  On November 13, 2018, the
Court issued an Order dismissing Plaintiff's claims against Brann; directing the
Clerk of Court to add the City of New York as a Defendant under Federal Rule
of Civil Procedure 21; and directing the Office of the Corporation Counsel to
"ascertain the identity of the Jane Doe correction officer whom Plaintiff seeks to
sue" pursuant to *Valentin* v. *Dinkins*, 21 F.3d 72, 76 (2d Cir. 1997).  (Dkt. #6).

On January 14, 2019, the City identified three female DOC employees
who were present during the alleged incident.  (Dkt. #11).  The following day,
the Court found that the City had complied with the Court's *Valentin* Order and
directed the Clerk of Court to substitute the Jane Doe defendant with the three
female officers: Correction Officer Tasha Capers (Shield No. 12801), Correction
Officer Carol Garcia (Shield No. 17515), and Captain Marie Milord (Shield
No. 669).  (Dkt. #12).  The Court cautioned Plaintiff, however, that failure to
provide further identifying information with regard to the Jane Doe defendant
might result in dismissal of the Complaint.  (*Id.*).

On February 1, 2019, Plaintiff provided further identifying information regarding the female correction officer involved in the altercation. (Dkt. #13). After obtaining several extensions, the City informed the Court on October 15, 2019, that the individual whom Plaintiff sought to name as the "Jane Doe" officer was Officer Garcia. (Dkt. #24). Accordingly, the Court directed the Clerk of Court to dismiss Officer Capers and Captain Milord as defendants in this suit. (Dkt. #25). Plaintiff filed a letter on October 28, 2019, requesting that the Court not dismiss Captain Milord from this action. (Dkt. #29). The City opposed Plaintiff's request on October 31, 2019, arguing that the request was moot and that Plaintiff could not add new claims against additional parties without amending the Complaint. (Dkt. #30). The Court denied Plaintiff's request, advising him that he would need to seek leave from the Court to amend the Complaint if he wished to bring claims against any defendants beyond the single Jane Doe officer, whom the City had identified as Officer Garcia. (Dkt. #31).

On December 20, 2019, Defendants filed their Answer. (Dkt. #33). An initial pretrial conference in the matter was held on January 23, 2020. (*See* Minute Entry for January 23, 2020). The following day, the Court entered a civil case management plan and scheduling order, which set a discovery schedule. (Dkt. #41). On May 19, 2020, the Defendants requested a ninety-day stay of discovery in this action due to the coronavirus pandemic, which request the Court granted the same day. (Dkt. #52, 53). The Court

subsequently issued two revised civil case management plans and scheduling orders, on August 19, 2020 (Dkt. #56), and on December 15, 2020 (Dkt. #64).

The Court convened a second pre-motion conference on March 18, 2021, during which the parties discussed lingering discovery issues and the Court set a briefing schedule for Defendants' motion for summary judgment. (*See* Minute Entry for March 18, 2021). Defendants filed their motion for summary judgment on April 22, 2021. (Dkt. #72-77). In response, Plaintiff filed a letter on May 21, 2021 (Dkt. #78), which the Court understands to have been submitted in opposition to Defendants' motion for summary judgment (*see* Dkt. #79). The Court directed Defendants to investigate certain discovery issues left open from the March 18, 2021 conference — namely, whether there was a Caucasian female with "glasses, reddish brown hair, short hair" who was also present during the incident — and to include an update on their findings in their reply brief. (Dkt. #79). Defendants filed their reply on June 25, 2021, in which they noted that they had been unable to identify the witness based on the description provided. (Dkt. #82-83).[3] Accordingly, the Court deems Defendants' motion to be fully briefed and ripe for decision.

---

[3]    The Court notes that during discovery, and again when briefing this motion, Plaintiff raised the issue of Defendants' failure to produce video footage of the incident. (*See* Dkt. #48; Pl. Opp. 2). However, as far back as March 13, 2020, the City notified the Court and Plaintiff that "upon information and belief, there is no video footage of the alleged July 23, 2018 use of force." (Dkt. #50). Therefore, the Court considers that issue resolved.

## DISCUSSION

A.    **Motions for Summary Judgment Under Federal Rule of Civil Procedure 56(a)**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[4]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P.* v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted).  If the movant has met its burden to show that no genuine

---

[4]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

factual dispute exists, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In light of Plaintiff's *pro se* status, the Court "afford[s] [him] a special solicitude[,]" and, in this regard, will liberally construe his pleadings and opposition papers. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court will read Plaintiff's "submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

The Court's task on this motion has been complicated by Plaintiff's failure to submit a Local Civil Rule 56.1 Statement of Material facts in response to Defendants' motion for summary judgment. Local Rule 56.1 requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," Local Civil Rule 56.1(b), and that each statement "be followed by a citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)," Local Civil Rule 56.1(d). The rule

further provides that "[e]ach numbered paragraph in the statement of material facts ... will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Indeed, Defendants argue that as a consequence of Plaintiff's failure to comply with Local Civil Rule 56.1, the Court should deem the facts in Defendants' 56.1 Statement to be admitted for purposes of this motion. (Def. Reply 2, 4-5).

While "[p]ro se litigants are ... not excused from meeting the requirements of Local Rule 56.1," the Court retains discretion "to consider the substance of the plaintiff's arguments" even where there is incomplete compliance with the rule. See Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (internal citations omitted); see also Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (internal quotation marks omitted)); accord Kennedy v. Arias, No. 12 Civ. 4166 (KPF), 2017 WL 2895901, at *4 (S.D.N.Y. July 5, 2017) (collecting cases). The Court will exercise its discretion to: (i) consider the materials submitted by Plaintiff and (ii) deem admitted those portions of Defendants' 56.1 Statement that are not controverted by any other evidence in the record. See Kennedy, 2017 WL 2895901, at *4; Chambliss v. Rosini, 808 F. Supp. 2d 658, 662 (S.D.N.Y. 2011)

9

(exercising discretion to consider a sworn declaration containing factual assertions and the plaintiff's deposition testimony where plaintiff failed to submit a proper Rule 56.1 statement).

## B.    Analysis

Construing Plaintiff's pleadings liberally, the Court determines that the Complaint can fairly be read to assert a claim under Section 1983 against Officer Garcia for her alleged use of excessive force.  (*See* Compl. 4 ("Jane Doe was threat[en]ing to slap me in my face[.]"); *id.* at 4-5 ("I [felt a] hand come down across the right side of my face and eye and I look[ed] up to see who had hit me and it was … Jane Doe who was ready to take an[o]ther swing at me again but the [Captain] stop[ped] her[.]")).  The Court also discerns from the Complaint state-law claims for assault and battery, which in this context are "nearly identical" to federal excessive force claims.  *See Kennedy*, 2017 WL 2895901, at *12.  The Court resolves Defendants' summary judgment motion with these claims against Officer Garcia in mind.[5]

---

[5]    While the City is a named defendant in this action, Plaintiff has not actually asserted any claims against it in the Complaint or his opposition papers.  Notably, Plaintiff makes no assertion of a policy or practice that could conceivably give rise to municipal liability against the City under Section 1983.  *See Monell* v. *Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690 (1978) (explaining that municipal liability under Section 1983 may lie where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").  In any event, as discussed below, Plaintiff has failed to establish an underlying violation of his constitutional rights, which is a prerequisite for a claim of municipal liability.  *See City of Los Angeles* v. *Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").  Accordingly, the Court dismisses the City from this case.

1.    **Officer Garcia's Alleged Use of Force Was Not Objectively Unreasonable**

"[42 U.S.C. § 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985).  There are two essential elements to any claim raised under Section 1983: "[i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis* v. *City of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  Here, Plaintiff's claim that Officer Garcia applied excessive force in attempting to intervene in the altercation between Plaintiff and the Inmate implicates his rights under the Fourteenth Amendment.

"While the Eighth Amendment's protection does not apply 'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment[.]"  *Ross* v. *Willis*, No. 16 Civ. 6704 (PAE) (KNF), 2021 WL 3500163, at *9 (S.D.N.Y. Aug. 9, 2021) (quoting *United States* v. *Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).  In contrast to an excessive force claim brought under the Eighth Amendment, a pretrial detainee asserting such a claim under the Fourteenth Amendment "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley* v. *Hendrickson*, 576 U.S. 389, 396-97 (2015).[6]

---

[6]    The Second Circuit previously required pretrial detainees asserting excessive force claims to "satisfy two requirements: [i] the 'subjective requirement' that a defendant had

11

Objective unreasonableness "turns on the facts and circumstances of each particular case," and is to be evaluated "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.  The Supreme Court has identified a number of non-exclusive factors that bear on the reasonableness of force used: "[i] the relationship between the need for the use of force and the amount of force used; [ii] the extent of the plaintiff's injury; [iii] any effort made by the officer to temper or to limit the amount of force; [iv] the severity of the security problem at issue; [v] the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Consistent with the "fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.* v. *Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

"The Second Circuit has long made clear that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Quinones* v. *Rollison*, No. 18 Civ. 1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (quoting *Boddie* v.

---

a 'sufficiently culpable state of mind' and [ii] the 'objective' requirement that the 'deprivation alleged is objectively sufficiently serious or harmful enough.'" *Ross* v. *Willis*, No. 16 Civ. 6704 (PAE) (KNF), 2021 WL 3500163, at *9 n.10 (S.D.N.Y. Aug. 9, 2021) (citations omitted).  However, in *Kingsley*, the Supreme Court removed the subjective component for pretrial detainees.  *See Kingsley* v. *Hendrickson*, 576 U.S. 389, 396-97 (2015).

*Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)).  In other words, a "plaintiff must show that the harm incurred was more than *de minimis.*"  *Berry* v. *City of New York Dep't of Corr.*, No. 12 Civ. 7819 (RWS), 2014 WL 2158518, at *5 (S.D.N.Y. May 22, 2014), *aff'd sub nom. Berry* v. *N.Y.C. Dep't of Correction*, 622 F. App'x 10 (2d Cir. 2015) (summary order).  Because running a prison "is an inordinately difficult undertaking," *Kingsley*, 576 U.S. at 399, courts must "afford prison officials some latitude to make 'good-faith effort[s] to maintain or restore discipline,'" *Taylor* v. *Nieves*, No. 17 Civ. 7360 (AJN), 2020 WL 7028907, at *2 (S.D.N.Y. Nov. 30, 2020) (quoting *Boddie*, 105 F.3d at 862).  Officers facing disturbances "are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." *Kingsley*, 576 U.S. at 399 (quoting *Graham* v. *Connor*, 490 U.S. 386, 397 (1989)).  If the force was "applied in a good-faith effort to maintain or restore discipline, it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law."  *Quinones*, 2020 WL 6420181, at *4 (quoting *Adilovic* v. *Cnty. of Westchester*, No. 08 Civ. 10971 (PGG), 2011 WL 2893101, at *6 n.12 (S.D.N.Y. July 14, 2011)).

It is undisputed that Plaintiff was involved in a physical altercation with the Inmate in the moments before and after Officer Garcia allegedly slapped him.  (*See* Def. 56.1 ¶¶ 9-24).  Specifically, Plaintiff had his hands wrapped around the Inmate's neck, and maintained this chokehold despite orders to let go, and despite a nurse's attempt to stop Plaintiff by grabbing his arm.  (*See id.*

at ¶¶ 16-20, 24).  Indeed, Plaintiff maintained his hold on the Inmate's neck even after being slapped.  (*See id.* at ¶ 24).

Courts in this District have repeatedly held that "a single slap that results in no injury constitutes unactionable, *de minimis* force."  *Lewis* v. *Huebner*, No. 17 Civ. 8101 (KMK), 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020).  Although Plaintiff submits that his "right eye was red and hurting for a few days" and that "at times [he] was seeing [stars] out [of] the corner of [his] right eye" following the alleged incident (Compl. 5), that claim alone is insufficient to give rise to a constitutional violation absent medical evidence or other evidentiary support of injury.  *See Santiago* v. *City of Yonkers*, No. 13 Civ. 1077 (TPG), 2015 WL 6914799, at *8 (S.D.N.Y. Oct. 30, 2015) (explaining that "an open-handed slap ... with no medical evidence and no other evidentiary support of injury, does not rise to the level of a constitutional violation." (citation and quotation mark omitted)); *Perry* v. *Stephens*, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (finding that the small bruise and minor pain resulting from Plaintiff being slapped four times was "not sufficiently serious or harmful to 'reach constitutional dimensions,'" particularly considering "the circumstances ... and the need to restore discipline"); *Santiago* v. *Campisi*, 91 F. Supp. 2d 665, 674 (S.D.N.Y. 2000) ("[I]t is [ ] clear under the law of this Circuit that an open-handed slap ... is not sufficiently 'repugnant to the conscience of mankind' to give rise to an Eighth Amendment claim.").[7]

---

[7]     At his deposition. Plaintiff sought to explain the lack of medical evidence by saying that his efforts to receive medical attention were thwarted by prison personnel.  This assertion is belied by the medical records that were produced to Plaintiff in discovery

Plaintiff attempts to raise a genuine dispute of material fact as to the objective reasonableness of the conduct by arguing that Officer Garcia's use of force was premeditated.  Putting to the side for the moment the fact that premeditated conduct does not necessarily equal excessive force, and that the relevant inquiry is an objective one, the Court also finds that Plaintiff is wrong as to the factual predicates of his argument.  In his deposition, Plaintiff claimed that he had a verbal altercation with Officer Garcia earlier in the day, during which she said to him, "keep talking [and] I'm going to smack you."  (Pl. Dep. 24:15-21).  However, the supposed trigger for physical contact did not occur — namely, Plaintiff did not continue speaking to Officer Garcia after he was approached by the Inmate.  (Pl. Dep. 32:3-7).  Indeed, Officer Garcia was not even present when the physical altercation between Plaintiff and the Inmate began.  (*See* Pl. Dep. 32:3-5, 40:2-9).  Furthermore, the record is clear that the slap occurred not because of any earlier conversation between Plaintiff and Officer Garcia, but because Plaintiff and another inmate engaged in a violent altercation that could not be stopped by other prison staff.

Plaintiff also attempts to raise a genuine dispute of material fact by claiming Officer Garcia *would have* used additional force had a superior officer

---

and filed under seal in this case.  These records clearly demonstrate that Plaintiff received medical attention from two separate medical professionals on July 24, 2018, for injuries received during the altercation.  (Dkt. #86-2 at 11-14 (Bellevue Hospital Discharge Summary, written by Maya Madhaven, MD, and dated July 24, 2018, at 10:32 a.m.); Dkt #86-3 at 10-12 (MDC Injury Report #199, written by Dr. Eugenio Mateo, MD, and dated July 24, 2018, at 10:20 p.m.)).  Even accepting that Plaintiff had temporary pain and blurred vision following the incident that was not recorded by the medical professionals, Plaintiff concedes that these symptoms ceased within a day or so of the incident.  (Pl. Dep. 108:3-25).

not admonished her to stop.  (Pl. Dep. 50:17-19).  More specifically, Plaintiff suggests that Officer Garcia was prepared to slap him a second time, but that her supervising officer, known as "Captain OG," "pulled her back to the side and started telling her like, listen, we don't do that, don't do that," presumably referring to the slap.  (Pl. Dep. 51:16-21).  Again, Plaintiff's argument is legally tenuous, insofar as the conduct ascribed to Garcia, even if different from that of other correction officers in the ward, would not for this reason qualify as excessive.  But again, Plaintiff is wrong on the facts.  Later in his deposition, Plaintiff told a far less certain version of the story, clarifying, "I had looked up and she was pretty much like in the position about to hit me again[.]  And that's when Captain OG came from, but I guess he was standing — I couldn't see him behind[.]  So I guess [Captain] OG pretty much grabbed her and told her to stop."  (Pl. Dep. 54:8-11).  And when asked how far away Captain OG was standing, Plaintiff replied, "I can't tell you that because I wasn't paying attention to him, my focus was on the inmate."  (Pl. Dep. 54:20-25).  Such rank speculation on Plaintiff's part cannot suffice to raise a triable issue.

On the undisputed facts of this case, shorn of Plaintiff's speculation, Officer Garcia came upon a violent altercation occurring between two inmates and had seconds to assess the situation before acting.  (*See* Def. 56.1 ¶¶ 12-14).  What is more, Plaintiff acknowledges that he was actively defying instructions to release his chokehold on the Inmate at the time of the incident, suggesting that the use of *some* force by facility personnel would have been reasonable under the circumstances.  (*Id.* at ¶¶ 16-20).  An objective observer

would thus perceive the circumstances as warranting some amount of force to put an end to an ongoing violent fight between two inmates. *See Amnesty Am.*, 361 F.3d at 123 (encouraging courts to consider, *inter alia*, whether the plaintiff was actively resisting when analyzing the reasonableness of force used under the Fourteenth Amendment); *Quinones*, 2020 WL 6420181, at *5 (finding that an officer's use of pepper spray to end a violent confrontation between two inmates was not objectively unreasonable, even though plaintiff had suffered a "serious, though not life-threatening, injury"); *Berry*, 2014 WL 2158518, at *6 (finding evidence that defendant officer used pepper spray to break up a violent fight between inmates insufficient to raise a genuine dispute about excessive force, and thus granting defendants summary judgment).

The Court concludes that, on this record, no reasonable jury could conclude that Officer Garcia's use of force was objectively unreasonable under the circumstances. For this reason, Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

### 2. Officer Garcia Would Be Entitled to Qualified Immunity as to Plaintiff's Excessive Force Claim

Plaintiff's excessive force claim fails for the independent reason that Officer Garcia would be entitled to qualified immunity. Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Ross*, 2021 WL 3500163, at *10 (quoting *Reichle* v. *Howards*, 566 U.S. 658, 664 (2012)). "Its purpose is to 'give government officials breathing room to make reasonable but mistaken

17

judgments' and to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at \*10 (quoting *City & Cnty. of San Francisco* v. *Sheehan*, 575 U.S. 600, 611 (2015)).

"A constitutional right was clearly established if, at the time of the officer's conduct, 'the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.'" *Ross*, 2021 WL 3500163, at \*10 (quoting *Dist. of Columbia* v. *Wesby*, 138 S. Ct. 577, 589 (2018)).  The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (internal quotation marks omitted).  "Although a 'case directly on point' is not required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Ross*, 2021 WL 3500163, at \*10 (quoting *Fabrikant* v. *French*, 691 F.3d 193, 213 (2d Cir. 2012)).  The clearly established right "must be defined with specificity." *City of Escondido, Cal.* v. *Emmons*, 139 S. Ct. 500, 503 (2019).  Defining the right as the "right to be free of excessive force" is "far too general." *Id.*  "Even if the right at issue was clearly established in certain respects, ... an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk* v. *Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)).

Summary judgment should be granted on the basis of qualified immunity only if "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ], could conclude that it was objectively reasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Ross*, 2021 WL 3500163, at *10 (quoting *Lennon* v. *Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (cleaned up)).  Because qualified immunity is an affirmative defense, defendants bear the burden of proof.  *Id.* at *10 (citing *Jackler* v. *Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)).

Even if a reasonable jury were to find that Officer Garcia violated Plaintiff's Fourteenth Amendment rights by using excessive force — and the Court finds that one could not — she would still be entitled to summary judgment.  In the circumstances of this case, no reasonable jury "could conclude that it was objectively reasonable for [Officer Garcia] to believe that [she] was acting in a fashion that did not clearly violate an established federally protected right." *Quinones*, 2020 WL 6420181, at *5 (quoting *Lennon*, 66 F.3d at 420).

Plaintiff contends that "any reasonable person would have let the time [ ] pass" to "think [things] over" prior to using force under these circumstances. (Pl. Opp. 1-2).  This conclusory statement, however, is not enough to defeat Officer Garcia's claim to qualified immunity.  After all, Officer Garcia did not have any time to let pass.  Even reading the record in the light most favorable to Plaintiff, Officer Garcia responded to an ongoing inmate-on-inmate

altercation that involved Plaintiff's chokehold on another inmate, at which point she allegedly slapped Plaintiff across the face.  Plaintiff has pointed to no authority, and the Court has found none, suggesting that this use of non-deadly force — a single open-handed slap — to regain control of a violent situation between inmates violated a clearly established right.

To be sure, the Second Circuit has stated that "the use of entirely gratuitous force is unreasonable and therefore excessive[.]"  *Tracy*, 623 F.3d at 99 n.5 (finding that "no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee"); *cf. Ben-Reuben* v. *Westchester County*, No. 17 Civ. 9156 (KMK), 2019 WL 1406868, at *4 (S.D.N.Y. Mar. 28, 2019) (declining to dismiss an excessive force claim based on an alleged slap where the court could not determine the extent of the injuries from the complaint, and because the alleged use of force was "entirely gratuitous").  Yet here, the undisputed facts establish that Officer Garcia's use of force was *not* gratuitous and, further, that Plaintiff continued his violent conduct after being warned to desist.  On summary judgment, Plaintiff must offer more than bald allegations that Defendants' conduct constituted excessive force.  Yet even reading the record favorably to Plaintiff, no reasonable jury could conclude that Officer Garcia's alleged slap was gratuitous.

Because Officer Garcia did not violate a clearly established right, she is entitled to qualified immunity on Plaintiff's excessive force claim. *See Quinones*, 2020 WL 6420181, at *6 (granting qualified immunity to an officer who used

pepper spray in a "targeted and limited manner" under similar circumstances);
*Berry*, 2014 WL 2158518, at *7.

### 3. Plaintiff's State-Law Claims of Assault and Battery Fail

"Federal excessive force claims and state law assault and battery claims
against police officers are nearly identical." *Kennedy*, 2017 WL 2895901, at
*12 (internal citations omitted). "[W]ith the exception of the state actor
requirement, the elements of a Section 1983 excessive force claim and state law
assault and battery claims are substantially identical." *Id.* (quoting *Lloyd* v.
*City of New York*, No. 14 Civ. 9968 (GHW), 2017 WL 1207838, at *19 (S.D.N.Y.
Mar. 31, 2017)).  Therefore, for the reasons stated above, summary judgment is
granted as to the state-law claims of assault and battery against Officer Garcia.
*See id.* at *12; *Kramer* v. *City of New York*, No. 04 Civ. 106 (HB), 2004 WL
2429811, at *11 (S.D.N.Y. Nov. 1, 2004) (dismissing Plaintiff's state-law assault
and battery claims where Plaintiff had not alleged excessive force in her § 1983
claim for false arrest, noting that "New York state law regarding assault and
battery parallels the federal laws regarding excessive force"); *see also Castro* v.
*Cnty. of Nassau*, 739 F. Supp. 2d 153, 178 (E.D.N.Y. 2010) (denying summary
judgment on state-law assault and battery claims where summary judgment
was denied on § 1983 excessive force claim because "the same standard
applies").

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in full. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff's address of record.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      February 1, 2022
            New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge